**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON KLEMKA, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>– against –<br><br>DRAKMOR INC., and SHERYL R. MORSON, individually, and JOHN DRAKOPOULOS, individually,<br><br>Defendants. | 26 CV 8268 (RK) (JBD) |

**DECLARATION OF RENEE MANFREDI**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, DISCLOSURE OF CONTACT INFORMATION, AND**
**<u>LEAVE TO DISTRIBUTE NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>**

Pursuant to 28 U.S.C. § 1746, I, Renee Manfredi, declare under penalty of perjury as follows:

1. I am an opt-in Plaintiff in the above-captioned matter against my former employers, Drakmor Inc., and individuals Sheryl R. Morson and John Drakopoulos (together, where appropriate, as "Defendants").

2. I worked for Defendants – a New Jersey corporation that operates a restaurant known as the Flemington Diner, located at 324 Route 31 in Flemington, New Jersey, and its two co-owners and day-to-day overseers of the restaurant – as a server from approximately January 2022 until May 2025.

3. Defendants Morson and Drakopoulos were and are the co-owners and day-to-day overseers of the restaurant in that they personally managed and oversaw, and continue to manage and oversee, the daily operations of the business, and were and are ultimately responsible for all matters with respect to the terms and conditions of employment for all of

the restaurant's employees, including hiring and firing employees, setting employees' schedules, determining their work responsibilities and rates and methods of pay, and maintaining employment records for all employees. Indeed, Drakopoulos hired me, set my hours and rate of pay, paid me, communicated my work instructions to me, and maintained or should have maintained my employment records. For her part, when Morson worked and/or was present in the restaurant, she gave instructions to the supervisors and managers. Morson fired me.

4. Morson and Drakopoulos also delegated some of the oversight of the restaurant to be shared with the restaurant's General Manager, Jose Novero, subject to their ultimate authority, including, as relevant here, collection of tips.

5. As a server, my primary job duties consisted of taking guests' orders, serving them their meals and beverages, and coordinating all restaurant service to the guests with the cooks in the kitchen, the host in the dining room, and the busboy.

6. Throughout my employment, Defendants required me to work, and I did generally work, five days per week, from 3:00 p.m. to 9:00 p.m. on four of the five weedays, and 8:00 a.m. to 4:00 p.m. on Sunday, without a scheduled or uninterrupted break during my shifts, for a total of about thirty-six hours per week.

7. Throughout my employment, Defendants paid me initially a fixed weekly salary of $149.00, which amounts to $4.13 per hour, and over time this slowly increased to $200.00, which amounts to $5.26 per hour, and those were also the hourly rates shown on my pay stubs, and this included the fixed amount of tips that Defendants allowed me to keep. In any case, this was less than federal minimum wage. I discussed this with several of my coworker servers, including Shannon Klemka, my sister Tara Manfredi, and Abby Ozimek.

We were upset that Defendants were paying all of us below the federal minimum wage. We complained to Drakopoulos about this at least twice, but Defendants refused to listen to us, let alone make any changes to bring our pay into conformance with the law.

8. In addition, we, servers, were angry that we did not receive our share of tips and we complained to each other and Drakopoulos about that too.

9. More specifically, Defendants' customers left tips for me and the other servers, either by leaving cash with the bill on the table, or by designating a specific amount to be tipped in their credit card transactions.

10. Throughout my employment, Defendants mandated that all of their servers hand over 20% of our cash and credit card tips to Novero or Drakopoulos at the end of each shift. We complied. We are unsure whether Drakopoulos or Novero kept that portion of our tips for themselves, used it to pay the kitchen staff, or a combination of those. In any case, neither owners nor management nor kitchen staff engage in any work serving the restaurant guests that would entitle them to a portion of our tips. Both busboys told me that they did not receive any tips. Defendants did not allow us to see the credit card tips and required us to accept what they gave us, minus 20%.

11. All of the servers were paid in the same or similar way.

12. None of the servers agreed to this arrangement.

13. During my employment, there were approximately twenty-five servers total who were affected by Defendants' practice of paying us below minimum wage and requiring us to pay them a portion of their cash tips.

14. In addition to servers Shannon, Tara, and Abby, I also discussed Defendants' failure to pay minimum wage and forcing us to give them a portion of our tips with at least ten

other servers in the restaurants, whom I know only by their first names. These include Adrienne, Angela, Debbie, Jason, Jessica, Lisa, Louie, Luis, Mohamed, and Pinar.

15. My co-workers and I communicated regularly with each other, as well as with Morson, Drakopoulos, and Novero, *via* our personal cell phones regarding work-related issues.

16. I believe that Defendants' other former and current employees would read a notice about this lawsuit if such a notice were distributed through Defendants' employees' personal cell phones by both email and text message.

17. I also believe that Defendants' current employees would read a notice about this lawsuit if such a notice were posted on a wall by the computers and on the wall in the kitchen in Defendants' restaurant. Those are the places where the employees regularly saw notices when I worked there.

18. I know that Defendants have a high rate of turnover with their employees, because I witnessed numerous non-managerial front-of-house employees start and subsequently leave Defendants' employ during my time working for Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

21-Nov-2026

Executed in Milford, New Jersey, on this ______ day of November 2026.

Renee Manfredi (Nov 21, 2026 12:21:33 EST)

RENEE MANFREDI

# Renee Declaration

Final Audit Report 2026-11-21

| | |
|---|---|
| Created: | 2026-11-20 |
| By: | Tony Consiglio (consig@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAQBx8gI5v4NeVVbs9FkrcN1phc9HT-bUT |

## "Renee Declaration" History

Document created by Tony Consiglio (consig@gmail.com)

2026-11-20 - 4:20:21 PM GMT- IP address: 74.66.105.226

Document emailed to naenaemanfredi@gmail.com for signature

2026-11-20 - 4:20:26 PM GMT

Email viewed by naenaemanfredi@gmail.com

2026-11-21 - 2:01:17 AM GMT- IP address: 172.225.113.131

Signer naenaemanfredi@gmail.com entered name at signing as Renee Manfredi

2026-11-21 - 5:21:31 PM GMT- IP address: 172.59.209.209

Document e-signed by Renee Manfredi (naenaemanfredi@gmail.com)

Signature Date: 2026-11-21 - 5:21:33 PM GMT - Time Source: server- IP address: 172.59.209.209 - Signature Appearance Selected: MOBILE_DRAW

Agreement completed.

2026-11-21 - 5:21:33 PM GMT